UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| eCHANGING BARCODE, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>TICKETMASTER LLC, and LIVE NATION ENTERTAINMENT, INC.<br><br>    Defendants. | Civil Action No.  1:25-cv-8983 |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, eChanging Barcode, LLC ("eChanging"), through its undersigned counsel, hereby brings the following allegations, and asserts the following claims against the above-named Defendants, Ticketmaster, LLC and Live Nation Entertainment, Inc. (collectively "Defendants"), to enforce its patent and obtain monetary and injunctive relief and recover its reasonable attorneys' fees and costs.

**NATURE OF THE ACTION**

1. This is an action for willful direct and indirect infringement of eChanging's United States Patent No. 9,047,715 in violation of the Patent Act, 35 U.S.C. § 1, *et seq*. based on Defendants unauthorized commercial making, use, offer for sale, and sale, and importation of its "SafeTix" technology in the United States.

**THE PARTIES**

2. Plaintiff eChanging Barcode, LLC is a Delaware Limited Liability Company partly owned by Alan Amron, a 77-year-old retired military person and lifelong inventor, with

1

United States patents awarded to him, with its principal place of business at 103 Jessup Avenue, Box 354, Quogue, New York 11959.

3. On information and belief, Defendant Live Nation Entertainment, Inc. ("Live Nation") is a corporation organized under the laws of Delaware with its principal place of business located at 9348 Civic Center Drive Beverly Hills, California 90210. Live Nation has a corporate office in 430 W 15th St, New York, NY 10011.

4. On information and belief, Defendant Ticketmaster, LLC ("Ticketmaster") is a limited liability company organized under the laws of the Commonwealth of Virginia with a place of business at 9348 Civic Center Dr, Beverly Hills, CA, 90210. On information and belief, Ticketmaster is the ticketing business of Live Nation and operates as a subsidiary of Live Nation.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

6. Personal jurisdiction is proper over Defendants because they provide ticket-sale services, marketing, and distribution globally through www.ticketmaster.com and www.livenation.com as well as their mobile apps and numerous retail outlets, including in New York. They sell and distribute tickets to events throughout New York, including at major venues such as Madison Square Garden, Barclays Center, Radio City Music Hall, and Yankee Stadium. Live Nation has at least one corporate office in New York, including at 430 W 15th St, New York, NY 10011. The patent infringement claim directly arises from Defendants' use and sale of SafeTix within New York.

7. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendants have committed acts of patent infringement in this District and have a regular and established place of business in this District, including at 430 W 15th St, New York, NY 10011.

## BACKGROUND

**A. TECHNOLOGY BACKGROUND**

8. Fraud in the ticketing industry has been a pervasive issue that has significantly impacted consumers, event organizers, and performers. As ticket sales shifted online, the public was still subject to fraud by counterfeit. Kirkman, Clark P. (2009) "WHO NEEDS TICKETS?" Examining Problems in the Growing Online Ticket Resale Industry," Federal Communications Law Journal: Vol. 61: Iss. 3, Article 8.

9. Inventor Alan Amron recognized the issues surrounding online ticket fraud, which involve the unauthorized duplication to produce counterfeit or non-existent tickets for sale, sometimes leaving legitimate buyers unable to access events they believed they had secured entry to. This form of fraud may be facilitated by sophisticated online platforms that mimic legitimate ticket sellers, exploiting the high demand for popular events. Consumers may not realize they have been duped into buying a duplicated or counterfeit ticket until they arrive at the event venue, only to be denied entry, resulting in financial loss and disappointment.

10. The prior art relied on static tickets vulnerable to unauthorized duplication made possible by scanners, printers, and radio-frequency ID ("RFID") tags. The 715 Patent prevents unauthorized duplication by introducing a server: 1) associating an electronic device, identifiable by a unique identifier, with a user and a location or service subject to access restrictions; and 2) obtaining and transmitting visual symbol information (e.g., barcodes) to be presented as an access credential *only* during a specified time and having a limited duration.

**B.   THE 715 PATENT**

11.     On June 2, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,047,715 (the "715 Patent" or "Asserted Patent"), entitled "System and method for credential management and administration." A true and correct copy of the 715 Patent is attached hereto as **Exhibit 1**.

12.     Plaintiff is the sole and exclusive owner of all right, title, and interest to and in, or is the exclusive licensee with the right to sue for, the Asserted Patent and holds the exclusive right to take all actions necessary to enforce its rights to the Asserted Patent, including the filing of this patent infringement lawsuit.

13.     The technology disclosed in the Asserted Patent relates to systems and techniques for administering the credentials individuals who are authorized, for example, to receive or benefit from a product or service, to enter an area of restricted access, or to be present at an event or performance.

14.     By way of representative example, the Asserted Patent claims "obtaining **first** visual symbol information" which may be used by a portable electronic device to initiate the display of a "**first machine discernable image.**" "The visual symbol information may include a barcode.

15.     The Asserted Patent further claims "obtaining **second** visual symbol information" which may be used by the portable electronic device to initiate the display of a "**second machine discernable image.**"

16.     The "first" machine discernable may be presented as an access credential (i.e., mobile ticket) during a *first* time interval. The "second" machine discernable imagine may be presented as an access credential during a *second* time interval.

17. The first and second machine discernable images are wirelessly transmitted to a user's portable electronic device:



18. The invention claimed in the Asserted Patent prevents, among other things, unauthorized ticket duplication via screenshots or static copies, a phenomenon that has plagued digital tickets since they began to be adopted.

19. The invention claimed in the Asserted Patent is not an abstract idea. For example, the claims cannot be fairly characterized as being directed to the abstract idea of managing credentials or authenticating users. Rather, the claims focus on specific technological improvements in a credential management system. Indeed, all independent claims of the Asserted Patent specifically mention a credential management system (claims 1, 19, 41) and recite the actions performed by a central server incorporating technical improvements that prevent counterfeiting via unauthorized duplication. The claimed methods specifically relate to

the actions of the credential management system in implementing these technical improvements—not, for example, a general-purpose computer. The patent specifically discusses the prior need for central administration for credential management systems. *See* 715 Patent, col. 2, ll. 52-58.

20. The claims recite the actions necessary to implement the technical improvements. For instance, claims 1 and 19 each recite a server "associating at a credential administration server a first portable electronic device, identifiable by a unique identifier, with a first user and at least one of a location or a service Subject to access restrictions." Likewise, claims 1, 19, and 41 recite obtaining by a server first and second information corresponding to a first machine discernable image to be used by a user during a first time interval of specified duration (*i.e.,* rotating credentials).

21. Claims 1, 19, and 41 of the Asserted Patent also recite transmission of the rotating credentials to the electronic devices. The specification further describes, as reflected in the claims, a system for managing credentials through portable electronic devices, which display unique visual symbols that change periodically, enhancing security and authenticity. Additionally, the specification details that when an attempt is made to gain access "a determination is made as to whether the visual symbol presented during the authentication request matches the unique device id and/or user to which it is assigned." 715 Patent, 9:54-57.

22. Accordingly, the 715 Patent provides significant advantages over prior art (static) ticketing systems, specifically improving security for events, premises, and access credentials. It first portable electronic device, identifiable by a unique identifier, with a first user and at least one of a location or a service subject to access restrictions, obtains rotating access credentials for the location or service, and transmits the rotating access credentials to the

associated device, thereby eliminating the fraud and/or counterfeiting caused by unauthorized duplication of credentials. It also prevents unauthorized resale of digital tickets on the secondary market and illegal transfers of tickets to others.

23. The technology of the Asserted Patent offers significant commercial value by providing much-needed protection that could not be previously implemented within the digital ticketing industry. The patented invention addresses fraud and counterfeiting via unauthorized duplication, as well as scalping, in digital ticketing systems by 1) associating an electronic device, identifiable by a unique identifier, with a user and a location or service subject to access restrictions; and 2) obtaining and transmitting rotating access credentials from a central server. Unlike static credentials, which have a fixed representation and can be easily copied or scanned, the rotating credentials of the Asserted Patent update periodically. Implementation of the claims of the Asserted Patent make it impossible for anyone to use a screenshot or a printout of the credential to access a service or a product

24. At Step 1 of the *Alice* Test, courts in S.D.N.Y have held that the "715 Patent is far afield from the patents that courts have held to be directed at ideas so abstract and universal as to be patent-ineligible." *eChanging Barcode, LLC v. MLB Advanced Media L.P.*, 24 Civ. 2930 (PAE), 2025 WL 1548814, at *7 (S.D.N.Y. May 30, 2025). Indeed, according to the court, "the claims of the 715 Patent, which describe technologically complex, dynamic, and cyber-enabled method of changing access credentials, are facially less abstract and quotidian those in *Realtime Tracker, Quantum Stream*, and *DietGoal*.[1] *Id.*

---

[1] *See Realtime Tracker, Inc. v. RELX, Inc.*, 659 F. Supp. 3d 384, 406 (S.D.N.Y. 2023) (patented billable timekeeping system directed at "the abstract idea of timekeeping"), *aff'd*, No. 2023-1756, 2024 WL 4746162 (Fed. Cir. Nov. 12, 2024); *Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 186 (S.D.N.Y. 2018) (same, as to attempt to patent the "familiar and unremarkable process" of targeted advertising); *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 284 (S.D.N.Y. 2014) (same, as to attempt to patent the "well known" process of dietary analysis and meal planning).

25. At Step 2 of the *Alice* Test, courts in S.D.N.Y have held that "eChanging's 'pioneering' rotating barcode technology…improves upon conventional static ticketing methods by (1) generating dynamic, rotating access credentials; (2) associating portable electronic devices, identifiable by unique identifiers subject to location- and time-based access restrictions; (3) offering dynamic visual symbol management at the credential administration server; and (4) supplying specific configurations for displaying the rotating access credentials set forth by the credential administration server." *MLB*, 2025 WL 1548814, at *8. Thus, according to the court, "the dynamic barcode method [] offers a notable and specific technical improvement over conventional methods." *Id.* at 9.

C. **SAFETIX**

26. Defendants themselves have recognized the long felt need for the technology disclosed in the Asserted Patent and thus launched SafeTix in 2019. An August 9, 2023 Ticketmaster article claims that "SafeTix is instrumental in tackling fraudulent tickets []. With encrypted ticketing technology ***and rotating barcodes***, fans can rest assured knowing their ticket is authentic. [] ***before SafeTix, many fans attempted to enter an event with screenshots and forged physical tickets***. [] staff and scanners can detect fake tickets in real-time ***thanks to SafeTix's rotating entry token***, ensuring that only genuine ticket holders gain access to the show." A true and correct copy of the August 9, 2023 article is attached hereto as **Exhibit 2**.

27. Defendants further advertise SafeTix as an "advanced feature" that "provides unparalleled protection." A true and correct copy of the SafeTix advertisement is attached hereto as **Exhibit 3**.

28. Defendants attribute significant value to SafeTix, disclosing it to investors as a "new feature" in its February 2020 Form 10-K:

8

App installations increased by 18% during the year, creating additional marketing opportunities for our company and driving conversion from search and discovery to purchase. On the mobile front, approximately 48% of our total tickets were sold via mobile and tablet devices in 2019, and our total mobile ticket sales increased by 13% year-over-year. ***This is a key component of our rollout of SafeTix which benefits our fans, our artists, and our clients***. We will continue to implement ***new features*** to drive further expansion of mobile ticket transactions and invest in initiatives aimed at improving the ticket search, purchase and transfer process.

A true and correct copy of the relevant page of the February 2020 Form 10-K is attached hereto as **Exhibit 4**.

29. In addition to Ticketmaster itself, the entities that use SafeTix praise the technology. For example, the MLB advertises, "the MLB Ballpark app now has ***Ticketmaster's SafeTix™*** enabled so tickets will ***have rotating barcodes for greater security***." According to the MLB, "[t]his technology has also been put in place ***to protect you from counterfeiting and fraud***, and to give you confidence that your ticket is genuine." A true and correct copy of the MLB Advertisement is attached hereto as **Exhibit 5**.

**COUNT I**
**Infringement of the 715 Patent**

30. Defendants, themselves or through partners, maintain a server facilitating use of the Ticketmaster mobile application which Defendants developed, published, and currently make available to users of iOS and Android devices:



Further, Defendants admits that they collect a "Device ID" when user download the Ticketmaster mobile application. They define "Device ID" as "*a unique identifier* specific to [a] device/app install."[2] Thus, on information and belief, Defendants associate at a credential administration server, a first portable electronic device, identifiable by a *unique identifier*, with a first user and at least one of a location or a service subject to access restrictions, as claimed in at least claims 1 and 19 of the Asserted Patent.

31.     Defendants advertise that SafeTix features "a rotating barcode that *changes every few minutes*." *See* Exhibit 3. Thus, on information and belief, SafeTix obtains first visual symbol information, at the credential administration server, for use by the first portable

---

[2] *Ticketmaster SafeTix*, https://developer.ticketmaster.com/products-and-docs/apis/partner/safetix/

10

electronic device in initiating display of a first machine discernable image to be presented as an access credential by the first user during a *first specified time interval*, as claimed in at least claims 1, 19, and 41 of the Asserted Patent.

32. Defendants advertise that "SafeTix are delivered directly to fans' mobile devices through the app or via SMS or email." *See* Exhibit 3. Defendants further advertise that "[a]fter receiving the encrypted token from the Order Management API, [Ticketmaster] partners will need to pass the token to the Ticketmaster Secure Entry SDK to render the tickets within their app." *See* Footnote 1. Thus, on information and belief, SafeTix initiates wireless transmission of the obtained first visual symbol information to the first portable electronic device for visible display of the first machine discernable image by the first portable device during the first time interval, as claimed in at least claims 1, 19, and 41.

33. Defendants advertise that SafeTix features "a *rotating* barcode that *changes every few minutes*." *See* Exhibit 3. Thus, SafeTix obtains a *second* visual symbol information, at the credential administration server, for use by the first portable electronic device in initiating display of a *second* machine discernable image to be presented as an access credential by the first user during *a second specified time interval*, as claimed in at least claims 1, 19, and 41 of the Asserted Patent.

34. Defendants advertise that "SafeTix are delivered directly to fans' mobile devices through the app or via SMS or email." *See* Exhibit 3. Defendants further advertise that "[a]fter receiving the encrypted token from the Order Management API, [Ticketmaster] partners will need to pass the token to the Ticketmaster Secure Entry SDK to render the tickets within their app." *See* Footnote 1. Thus, on information and belief, SafeTix initiates wireless transmission of the obtained second visual symbol information to the first portable electronic

device for visible display of the second machine discernable image by the first portable device during the first time interval, as claimed in at least claims 1, 19, and 41.

35.  Data transmitted from the server to the first portable device during the first and second time intervals may include an assigned seating location, an event start time, an event date, and names of competing team:



36.  Defendants also knowingly and intentionally induce infringement of claims of the Asserted Patent in violation of 35 U.S.C. § 271(b). Defendants have had knowledge of the Asserted Patent and the infringing nature of SafeTix at least as early as April 16, 2024. Despite this knowledge of the Asserted Patent, Defendants continues to actively encourage and instruct its customers and end users (for example, through online the Ticketmaster mobile application) to use SafeTix in ways that directly infringe the Asserted Patent. Defendants do so knowing

12

and intending that its customers and end users will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell SafeTix, despite its knowledge of the Asserted Patent, thereby specifically intending for and inducing its customers to infringe the Asserted Patent through the customers' normal and customary use of SafeTix.

## **PRAYER FOR RELIEF**

For the foregoing reasons, eChanging prays for relief and entry of judgment as follows:

A. Entry of judgment declaring that Defendant infringes one or more claims of the Asserted Patent, either literally or via the doctrine of equivalents.

B. Entry of judgment declaring that Defendants' infringement of the Asserted Patent is willful;

C. An order awarding damages sufficient to compensate Plaintiff for Defendant's infringement of the Asserted Patent, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

D. Enhanced damages pursuant to 35 U.S.C. § 284;

E. Entry of judgment declaring that this case is exceptional and awarding Plaintiff its costs and reasonable attorney fees pursuant to 35 U.S.C. § 285;

F. An accounting for acts of infringement;

G. Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

H. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, eChanging requests a jury trial on all issues so triable.

Dated: October 29, 2025                                   Respectfully submitted,

*/s/ David L. Hecht*
David L. Hecht
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: 212-851-6821
E: dhecht@hechtpartners.com

Delphine Knight Brown
dkbrown@hechtpartners.com
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 851-6821

J. Tanner Murphy (*pro hac vice* forthcoming)
tmurphy@hechtpartners.com
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 851-6821

Gerald F. Dunne
Jerry.Dunne@dunnelaw.net
The Law Offices of Gerard F. Dunne, P.C.
56 Lakeview Drive
Riverhead, New York 11901
Telephone: (917) 656-7753

*Counsel for Plaintiff eChanging Barcode, LLC*